UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEITH EDWARD GARDINER,

                Plaintiff,

v.

CORIZON HEALTH, INC. et al.,

                Defendants.

_____/

Case No. 2:21-cv-167

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 11.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 10.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v.*

*Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id*. at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Gasperich, Lancour, and Schroeder for failure to state a claim. The Court will dismiss Plaintiff's state law claims against Defendants Gasperich, Lancour, and Schroeder without prejudice to his ability to bring those claims in state court. Plaintiff's Eighth Amendment and state law claims against Defendants Corizon Health, Inc. (Corizon), Bedient, Bergh, Wright, and Westcomb remain in the case. Additionally, the Court will deny Plaintiff's motion to serve the complaint (ECF No. 3) as premature and will deny Plaintiff's motion for the appointment of counsel (ECF No. 4).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, __ F.4th __, 2022 WL 322883, at *4–6, *4 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corizon; Nurses Unknown Bedient, Unknown Bergh, Unknown Wright, and Unknown Gasperich; Physician's Assistant (PA) Unknown Westcomb; Grievance Coordinator Unknown Lancour; and Warden Unknown Schroeder. (Compl., ECF No. 1, PageID.1.)

In Plaintiff's complaint, he alleges that on August 16, 2020, "while 'merely walking,' the Plaintiff's knee 'locked' into a bent position." (*Id.*, PageID.5.)[2] When this happened, Plaintiff dropped to the ground "in excruciating pain," and he could not stand or straighten his leg. (*Id.*) Thereafter, Plaintiff "smacked his knee/leg repeatedly to 'put it back into place,'" and then his knee "popped" into place. (*Id.*) A correctional officer brought a wheelchair for Plaintiff; however, Plaintiff states that "[t]he chair was not needed." (*Id.*) Plaintiff then "limped and hobbled into healthcare" where Nurses Bedient and Bergh "were 'on duty.'" (*Id.*)

Upon Plaintiff's arrival, "[n]o vitals were taken." (*Id.*) Plaintiff described "what had happened [with his knee]" and indicated that it had happened "twice before." (*Id.*) Nurse Bedient stated, "What do you want me to do about it," and then stated, "It looks fine to me." (*Id.*) Plaintiff asked for "x-rays, an M.R.I., [and] surgery, because [he was] in intense pain," explaining "this knee is 'messed up.'" (*Id.*) Nurse Bergh stated, "It looks fine to me," and Nurse Bedient stated, "No. You don't need any of those things." (*Id.*) Plaintiff asked to be referred to PA Westcomb, so

---

[2] The Court omits the emphasis and brackets that Plaintiff used in his complaint when quoting Plaintiff's complaint in this opinion. Any alterations to the quotations in this opinion are added by the Court.

4

that she could "make that decision." (*Id.*) Nurse Bedient indicated that she would not refer him to the PA. (*Id.*, PageID.6.) When Plaintiff asked what he should do if his knee locked again, Nurse Bedient replied, "Go back to your cell and just deal with it." (*Id.*)

A few days later, Plaintiff "saw Nurse Bergh on the walk," and told her that he "was in a great deal of pain and was having trouble walking and needed to see the PA." (*Id.*) Approximately one week later, Plaintiff was seen by PA Westcomb. (*Id.*) After Plaintiff described his symptoms, PA Westcomb "[g]uessed that the injury was a 'pulled' muscle or a tendon problem." (*Id.*) PA Westcomb provided Plaintiff "with a few pages of stretches" for his leg, and she indicated that she would "set up" an x-ray. (*Id.*, PageID.7.) PA Westcomb explained that "Corizon's and MDOC's policy is[] an 'order' of tests must be done (per policy) before the next test." (*Id.*)

"A few weeks into September 2020, no follow-up appointments were made, no pain 'meds' were given, and no x-rays were done." (*Id.*) Plaintiff then saw PA Westcomb "on the walkway," and told her that his knee was "hurting badly." (*Id.*) Plaintiff asked when he would be scheduled for an x-ray, and he "was told, 'It isn't going to happen[] [b]ecause the prison will not allow the x-ray tech into the prison[] due to COVID-19.'" (*Id.*)

Subsequently, "[a]t least[] once per month (September, October, November)," Plaintiff's knee "locked up." (*Id.*) "Because the Healthcare Department would not help [Plaintiff]," his "only cure" was to "smack" his knee. (*Id.*) Each time Plaintiff's knee locked, "[t]he pain was worse," and it "took longer to 'unlock' the knee." (*Id.*)

On December 12, 2020, "while outside, on the basketball court, and while doing push-ups, . . . Plaintiff's knee 'snap-locked into a bent position.'" (*Id.*, PageID.8.) Plaintiff's pain level was a ten on a scale of ten, and Plaintiff was taken to medical in a wheelchair. (*Id.*) "Nurses Wright and Bergh were 'on duty.'" (*Id.*) The nurses "asked what happened," and Plaintiff "gave a

four (4) month history of the injury and the current situational report." (*Id.*) Then, "[t]he nurses asked him to pull up his pant legs so they could observe both knees." (*Id.*) Nurses Wright and Bergh indicated that there did not appear to be any swelling. (*Id.*) Plaintiff explained "that it was most likely ligament damage and there would not be swelling." (*Id.*) The nurses then said, "It is Saturday, it is late, and there isn't anybody on staff after 8:00pm. We are going home soon and there is nothing we can do for you." (*Id.*) When Plaintiff asked what could be done for his knee, the nurses replied, "We can't do anything about that. Go back to your cell and fix it yourself." (*Id.*, PageID.9.) They then "sent the Plaintiff out of medical with his knee still 'locked up' and in unbearable pain." (*Id.*) Before he left, Nurses Wright and Bergh "did tell the Plaintiff . . . that they would 'come by' the following morning . . . to 'check' on the knee." (*Id.*, PageID.10.)

Thereafter, when he was back in his cell, Plaintiff "spent over three (3) hours trying to smack his knee back in place," and "[e]ventually it 'popped' [back in] . . . with pain so bad [Plaintiff] yelled out a blood-curdling scream." (*Id.*, PageID.9–10.) The following day, Nurses Wright and Bergh did not check on Plaintiff, as they had indicated they would do. (*Id.*, PageID.10.)

Two days later, on December 14, 2020, Plaintiff was called to medical to see PA Westcomb. (*Id.*) Plaintiff explained the situation to PA Westcomb, and she "changed her original diagnosis of a 'pulled' muscle or tendon injury, and guessed[] that 'it' was now a ligament injury." (*Id.*) PA Westcomb then asked, "What were the results of your x-rays?" (*Id.*) When Plaintiff explained that he had not received an x-ray, PA Westcomb indicated "that should have been done back in August." (*Id.*) PA Westcomb "checked her computer notes, looked at the Plaintiff and said, 'S[***]! I never ordered the x-rays.'" (*Id.*) PA Westcomb indicated that she would schedule the x-rays at the local hospital and that she would "push" the request through "to make sure [Plaintiff received] the x-ray and an M.R.I." (*Id.*) When Plaintiff asked why the x-rays had not been

scheduled earlier, PA Westcomb indicated that she did not think Plaintiff "could leave due to the pandemic." (*Id.*) PA Westcomb also indicated that "unless [she] 'pushed' for it, nobody was going to get x-rays at the hospital," and she explained that she did not initially "push" the request "[b]ecause, at first, [she] thought it was a 'pulled' muscle or tendon injury[;] but now, it appears much worse, like a ligament injury." (*Id.*, PageID.10–11.)

The following day, December 15, 2020, Plaintiff went to Munising Hospital for x-rays. (*Id.*) On December 16, 2020, "Plaintiff sent a healthcare request" to PA Westcomb, "requesting for a bottom bunk 'detail,'" because climbing up the bunk ladder "was one way that caused his knee to 'lock up.'" (*Id.*) Plaintiff also requested "Glucosamine (to aid in anti-knee pain), and[] for the results of his x-rays." (*Id.*) The next day, December 17, 2020, PA Westcomb replied, and she indicated that "[t]he x-rays were fine (no broken bones)," that she had submitted a request for an M.R.I., and that Plaintiff could not receive "Glucosamine" or a bottom bunk assignment. (*Id.*) Plaintiff states that thereafter a month passed, and he had "no contact from healthcare or the PA." (*Id.*)

On January 12, 2021, Plaintiff "sent a healthcare request form, asking, "When is my M.R.I.? My knee locked up again." (*Id.*) Plaintiff was scheduled for an appointment with PA Westcomb two weeks later. (*Id.*) At the appointment, Plaintiff described his symptoms, and PA Westcomb "changed her diagnosis." (*Id.*) PA Westcomb "now guessed" that Plaintiff "had a torn meniscus on either his tibia or femur bone. . . . [And,] [s]he called it a 'bucket-tear.'" (*Id.*) PA Westcomb indicated that surgery was "the only way to fix it." (*Id.*) PA Westcomb said that "[a]n M.R.I. for you . . . is not a priority, and you are not approved." (*Id.*, PageID.12.) PA Westcomb further stated that Plaintiff was "not approved for an M.R.I." because "they don't know if you need surgery." (*Id.*) Plaintiff asked, "Who are 'they', and[] isn't that the point of an M.R.I.? (*Id.*) PA

7

Westcomb explained that "they" were "the upper administration," and she agreed that the point of

the M.R.I. was to determine the need for surgery. (*Id.*) PA Westcomb told Plaintiff to "suck it up"

when Plaintiff asked, "What about my knee?!" (*Id.*)

On February 23, 2021, Plaintiff "sent another healthcare request to medical[] and the PA,

due to his knee 'locking up' again." (*Id.*) PA Westcomb did not see Plaintiff; however, on March

4, 2021, Plaintiff was seen by Nurse Gasperich. (*Id.*) At the appointment, Nurse Gasperich told

Plaintiff the following:

> A) – We do not think you are injured. Because everytime you come to healthcare, your knee is "fine;"
> B) – MDOC and Corizon Health Inc., will not spend money on tests just to "check" for an injury, because it is too expensive;
> C) – MDOC and Corizon Health Inc., will not approve an M.R.I. – unless – your knee is permanently injured, or, permanently "locked" in the bent position;
> D) – I'm guessing[] that your injury is most likely a "bucket tear" in your meniscus, and your ligaments are catching on the tear and hooking, locking your knee in the bent position. It hurts "like Hell" and definitely requires surgery. I had something similar . . . . I finally got surgery, and now it is better.

(*Id.*, PageID.12–13 (formatting in original).) When Plaintiff told Nurse Gasperich about his

December 12, 2020, interaction with Nurses Wright and Bergh, Nurse Gasperich indicated that

"[t]he nurses should not have made you go back to your cell while your knee was severally [sic]

injured[;] '[t]hey' should have sent you to the hospital." (*Id.*, PageID.13.)

Plaintiff states that his appointment with Nurse Gasperich "was the last time that [he]

requested medical assistance for this leg/knee injury (even though his knee periodically 'locks-

up') because MDOC and Corizon will not help him unless he is 'crippled'/permanently injured."

(*Id.*) Plaintiff further states that his injury "has not improved, nor[] has it diminished in pain," and

he "suffers from the fear of complete, total, and permanent damage to his knee." (*Id.*, PageID.14.)

With respect to Corizon, Plaintiff alleges that it "has a 'reputation' of outright denying

follow-up or specialized care[] when such care is not 'life or death' injuries, not permanent

damaging injury, or such care is expensive." (*Id.*, PageID.17.) Further, Plaintiff alleges that Grievance Coordinator Lancour "has a 'reputation' of denying most (if not all) grievances/administrative remedies submitted by prisoners." (*Id.*) Plaintiff also alleges that Grievance Coordinator Lancour's "failure to provide administrative remedy to the Plaintiff's serious medical need" and "failure to take steps to ensure [Plaintiff's] safety and adequate medical care for the Plaintiff[] constituted a 'deliberate indifference' to Plaintiff's medical needs." (*Id.*, PageID.17–18.) As to Warden Schroeder, Plaintiff alleges that Warden Schroeder's "denial of the appeal of administrative remedy to the Plaintiff, and her failure to take steps and follow her duty of/to providing care and/or administrative remedy to the Plaintiff's medical needs[] constituted a 'deliberate indifference' to Plaintiff's medical needs." (*Id.*, PageID.18.)

Based on the foregoing allegations, Plaintiff avers that Defendants' actions constituted medical malpractice and violated his rights under the Eighth Amendment. (*Id.*, PageID.2, 15–18.) Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.18–20.)

## II.    Plaintiff's motions

### A.    Motion to serve the complaint

In Plaintiff's motion to serve the complaint, he requests that the Court "issue an order requiring the United States Marshal Service . . . to serve the complaint and summons upon the Defendants." (ECF No. 3, PageID.37.) Until Prisoner Early Mediation is completed, Plaintiff's motion to serve the complaint is premature. Therefore, at this time, Plaintiff's motion to serve the complaint (ECF No. 3) will be denied.

### B.    Motion for the appointment of counsel

Plaintiff has requested the appointment of counsel. (ECF No. 4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of*

*Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 4) therefore will be denied.

## III.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

11

harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,

894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment

states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme

Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind. Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison

medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state

a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.

Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and

considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr.

4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete

denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has

received some medical attention and the dispute is over the adequacy of the treatment, federal

courts are generally reluctant to second guess medical judgments and to constitutionalize claims

which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Defendants Lancour and Schroeder

Plaintiff alleges that Defendant Grievance Coordinator Lancour's "failure to provide administrative remedy to the Plaintiff's serious medical need" violated Plaintiff's Eighth Amendment rights. (Compl., ECF No. 1, PageID.18.) Relatedly, Plaintiff alleges that Defendant Warden Schroeder's "denial of the appeal of administrative remedy to the Plaintiff" violated his Eighth Amendment rights. (*Id.*)

However, the mere denial of a prisoner's grievance does not state a claim of constitutional dimension. *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) (citations omitted) ("The denial of the grievance is not the same as the denial of a request to receive medical care." (quoting *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001))); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[Plaintiff]'s only allegations against [these defendants] involve their denial of his administrative grievances[;] . . . [t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts . . . .").

Additionally, to the extent that Plaintiff seeks to hold Defendant Schroeder liable for the actions of her subordinates, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Furthermore, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See id.* at 678–79; *Twombly*, 550 U.S. at 555.

For all of the reasons set forth above, Plaintiff has failed to allege that Defendants Lancour and Schroeder engaged in any active unconstitutional behavior. Accordingly, Defendants Lancour and Schroeder are properly dismissed.

### 2.    Defendant Gasperich

Plaintiff alleges that he was seen by Defendant Gasperich on March 4, 2021, and at the appointment, Defendant Gasperich told Plaintiff the following:

A) – We do not think you are injured. Because everytime you come to healthcare, your knee is "fine;"
B) – MDOC and Corizon Health Inc., will not spend money on tests just to "check" for an injury, because it is too expensive;

15

> C) – MDOC and Corizon Health Inc., will not approve an M.R.I. – unless – your knee is permanently injured, or, permanently "locked" in the bent position;
>
> D) – I'm guessing[] that your injury is most likely a "bucket tear" in your meniscus, and your ligaments are catching on the tear and hooking, locking your knee in the bent position. It hurts "like Hell" and definitely requires surgery. I had something similar . . . . I finally got surgery, and now it is better.

(Compl., ECF No. 1, PageID.12–13 (formatting in original).) Additionally, Plaintiff alleges that Defendant Gasperich told him that when he was seen by medical on December 12, 2020, "[t]he nurses should not have made you go back to your cell while your knee was severally [sic] injured[;] '[t]hey' should have sent you to the hospital." (*Id.*, PageID.13.) After his appointment with Defendant Gaserpich, Plaintiff contends that he did not seek further medical care for his knee injury "because MDOC and Corizon will not help him unless he is 'crippled'/permanently injured." (*Id.*)

Plaintiff does not allege that Defendant Gasperich personally denied him medical care. Instead, Plaintiff contends that Defendant Gasperich told Plaintiff his opinion regarding the medical treatment that Plaintiff had received, or might receive in the future, from other providers. Moreover, there are no facts alleged regarding the interaction between Plaintiff and Defendant Gasperich that support the inference that Defendant Gasperich was deliberately indifferent to Plaintiff's serious medical need. Because Plaintiff fails to allege that Defendant Gasperich denied him necessary medical care, his Eighth Amendment claim against Defendant Gasperich is properly dismissed.

### 3. Defendant Corizon

Plaintiff alleges that Defendant Corizon violated his Eighth Amendment rights by failing to provide Plaintiff with adequate medical care.

A private entity that contracts with the state to perform a traditional state function like providing healthcare to inmates—as Corizon does—can "be sued under § 1983 as one acting

'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the governmental body's officers. *Monell*, 436 U.S. at 690. A "custom" is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted).

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Corizon, Corizon's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Corizon's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

In this action, Plaintiff alleges that Nurse Gasperich told him that the "MDOC[3] and Corizon Health Inc., will not spend money on tests just to 'check' for an injury, because it is too expensive," and the "MDOC and Corizon Health Inc., will not approve an M.R.I. – unless – [Plaintiff's] knee is permanently injured, or, permanently 'locked' in the bent position." (Compl., ECF No. 1, PageID.12.) Plaintiff also alleges that Defendant Corizon "has a 'reputation' of outright denying follow-up or specialized care[] when such care is not 'life or death' injuries, not permanent damaging injury, or such care is expensive." (*Id.*, PageID.17.) Plaintiff contends that Defendant Westcomb was following Corizon's policy "when she denied any specialized care to the Plaintiff." (*Id.*)

---

[3] Plaintiff does not name the MDOC as a Defendant; however, to the extent that Plaintiff intended to do so, Plaintiff would not be able to maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, Plaintiff's claims against the MDOC would be properly dismissed on grounds of immunity.

At this stage of the proceedings, Plaintiff's allegations, taken as true and in a light most favorable to Plaintiff, are sufficient to show that Corizon employed a custom or policy that caused the constitutional deprivation alleged.

### 4. Defendants Bedient, Bergh, Wright, and Westcomb

Plaintiff alleges that Defendants Bedient, Bergh, Wright, and Westcomb violated his Eighth Amendment rights by denying him medical care and by failing to provide adequate medical care for his knee.

Specifically, with respect to Defendants Bedient, Bergh, and Wright, Plaintiff alleges that after his knee locked on August 16, 2020, he was seen by Defendants Bedient and Bergh, (Compl., ECF No. 1, PageID.5), and after his knee "snap-locked into a bent position" on December 12, 2020, he was seen by Defendants Wright and Bergh. (*Id.*, PageID.8.) On both occasions, Plaintiff contends that these Defendants did not provide any medical treatment for his knee despite the "unbearable pain." (*Id.*, PageID.9; *see id.*, PageID.5–6.) Plaintiff's allegations against Defendants Bedient, Bergh, and Wright, taken as true and in the light most favorable to Plaintiff, are sufficient to state a claim under the Eighth Amendment for the denial of medical care or the provision of inadequate medical care.

With respect to Defendant Westcomb, as detailed above, Plaintiff alleges that he was seen by Defendant Westcomb on several occasions during the time period relevant to this lawsuit. *See supra* Part I. Although Plaintiff has by no means proven deliberate indifference on the part of Defendant Westcomb, and individually some of Plaintiff's allegations may simply show disagreement with treatment decisions and the evolving nature of Defendant Westcomb's diagnosis, when taken as a whole, the factual allegations, accepted as true and taken in the light most favorable to Plaintiff, support the inference that Plaintiff had a serious medical need and that Defendant Westcomb may have been deliberately indifferent to this need.

Accordingly, the Court concludes that, at this stage, Plaintiff has alleged sufficient facts to support Eighth Amendment claims against Defendants Bedient, Bergh, Wright, and Westcomb.

## IV.     State law claims

In addition to Plaintiff's federal claims, Plaintiff also claims that Defendants violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

Moreover, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff continues to have pending federal claims against Defendants Corizon, Bedient, Bergh, Wright, and Westcomb, the Court will exercise supplemental jurisdiction over his state law claims against these Defendants. However, Plaintiff's federal claims against Defendants Gasperich, Lancour, and Schroeder will be dismissed, and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Therefore,

Plaintiff's state law claims against Defendants Gasperich, Lancour, and Schroeder will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

## Conclusion

Plaintiff's motion to serve the complaint (ECF No. 3) will be denied as premature, and Plaintiff's motion for the appointment of counsel (ECF No. 4) will be denied.

Furthermore, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims against Defendants Gasperich, Lancour, and Schroeder will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Gasperich, Lancour, and Schroeder will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts. Plaintiff's Eighth Amendment and state law claims against Defendants Corizon, Bedient, Bergh, Wright, and Westcomb remain in the case.

An order consistent with this opinion will be entered.


Dated:   February 24, 2022                         /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge