UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEITH EDWARD
GARDINER #383334,

        Plaintiff,

v.

CORIZON HEALTH, INC., et al.,

        Defendants.
_____/

Case No. 2:21-cv-00167

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment due to Plaintiff's failure to exhaust his administrative remedies (ECF No. 23 and 30) and Plaintiff's motion for summary judgment (ECF No. 48).

The Plaintiff in this case – state prisoner Keith Gardiner – filed a verified complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Gardiner alleges that Defendants failed to provide him with proper medical care for his knee injury and pain. (*Id.*) Gardiner says that his knee locked up in August of 2020, and Defendants refused to provide him proper medical care in violation of his rights under the Eighth Amendment. The remaining Defendants include Michigan Department of Corrections (MDOC) employees Registered Nurse (RN) Bedient, RN Bergh, RN Wright, Corizon Health Inc. (Corizon), and Corizon employee Physician Assistant (PA) Westcomb.

Defendants move for summary judgment arguing that Gardiner failed to exhaust his administrative remedies. Gardiner moves for summary judgment asserting only that he exhausted his administrative remedies. Gardiner filed one relevant grievance prior to filing this lawsuit. That grievance was rejected for failing to attempt to first resolve the issues grieved. A review of the record shows that the grievance was not properly rejected because Gardiner asserted that he discussed the issues with all the individuals involved.

The grievance named only Defendants RN Bedient and PA Westcomb. The grievance failed to name RN Bergh, RN Wright, and Corizon. It is recommended that the Court grant Defendants motions, in part, by dismissing RN Bergh, RN Wright and Corizon without prejudice due to Gardiner's failure to exhaust his administrative remedies, and deny the motions, in part, as to RN Bedient and PA Westcomb. It is further recommended that Court deny Gardiner's motion for summary judgment based upon his claim that he exhausted his available remedies because such a claim does not entitle Gardiner to summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

[1] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*)  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

3

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

4

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process

5

and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id*. at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the

inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified if an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

Before filing his complaint, Gardiner filed one grievance with an incident date of December 12, 2020. That grievance is **LMF-20-12-1678-28i**. That grievance raises Gardiner's medical concerns regarding his knee.[3]

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

[3] In his response to Defendants' motions, Gardiner also attached copies of a Step I and Step II and III appeals he submitted in **LMF-21-07-0785-28i**. (ECF No. 34-1, PageID.183; ECF No. 24-2, PageID.184.) Gardiner filed his Step I grievance in **LMF-21-07-0785-28i** on July 21, 2021, which is more than a month after he filed the complaint in this case. (*See* ECF No. 1 (dated June 3, 2021).) Gardiner did not include the responses that he received. But because Gardiner pursued this grievance *after*

8

Gardiner's Step I grievance in **LMF-20-12-1678-28i** is shown below.

> **What attempt did you make to resolve this issue prior to writing this grievance? On what date?** AUGUST – TO PRESENT
> **If none, explain why.** I BROUGHT THIS ISSUE UP WITH THE NURSES AND P.A. WESTCOMB. I TOLD THEM I NEEDED AN X-RAY, M.R.I. AND POSSIBLE SURGERY.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.
>
> MY RIGHT KNEE "POPPED" OUT OF PLACE TO THE POINT WHERE A WHEELCHAIR WAS NEEDED (12/12/20). THE NURSING STAFF, DID ABSOLUTELY NOTHING TO RECTIFY THE ISSUE, THE STAFF THEN HAD ME RETURN TO MY UNIT WITH MY KNEE STILL OUT OF PLACE! – THIS IS A DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED – ESTELLE V. GAMBLE (429 US 97). – TO FURTHER SUPPORT THIS INDIFFERENCE, IN AUGUST WHEN MY KNEE "POPPED" OUT OF PLACE, NURSE BEDIENT SAID, "JUST DEAL WITH IT." – P.A. WESTCOMB ORDERED AN X-RAY IN AUG/SEPT 2020 – BUT THE X-RAY WAS NEVER DONE! – ALSO – THE NURSES ON 12/12/20, SAID THAT THEY WOULD COME BY ON 12/13/20, TO CHECK ON ME – THEY NEVER SHOWED! – ASIDE FROM P.A. WESTCOMB, THE NURSES' "TREATMENT" IS SO "LAZY" OR INCOMPETENT IT ISN'T REALLY MEDICAL. ADAMS V. POAG (61 F 3d 1537)
>
> Grievant's Signature: K. E. Gardiner

(ECF No. 31-3, PageID.145.)

This grievance was rejected at Step I because Gardiner failed to attempt to resolve the issue with staff prior to filing the grievance. The Step I response stated the following:

> Your Step I grievance regarding **Failed to attempt to resolve the issue with staff** was received in this office on 12/15/2020 and was rejected due to the following reason:
> The grievant did not attempt to resolve the issue with the staff member most directly involved prior to filing the grievance unless prevented by circumstances beyond his/her control of if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration.

---

he filed this lawsuit, the Court should not consider it. In addition, it is unclear if any claims raised in **LMF-21-07-0785-28i** were properly exhausted, and Gardiner named only PA Westcomb and a nondefendant nurse in his Step I grievance. The grievance appears to argue that he should not have been charged a $5.00 co-pay. Gardiner seems to concede that this grievance was not properly exhausted because it was rejected. (ECF No. 34, PageID.172.)

9

(ECF No. 31-3, PageID.146.) This rejection was upheld at Step II and Step III. (*Id.*, PageID.142-144.)

Ordinarily, when a grievance is rejected for a failure to satisfy policy, the grievance fails to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). In the opinion of the undersigned, there exists a genuine issue of material fact regarding whether Gardiner attempted to resolve the issue with staff prior to filing his Step I grievance. The Step I grievance, which is shown above, indicates that he did attempt to resolve the issue with staff. The grievance response rejecting the grievance fails to address Gardiner's assertion that he attempted to resolve the matter with staff. In addition, the response seems to include a new rule, not in the policy directive, by stating that Gardiner failed to resolve "with staff member *most directly* involved." (Emphasis added.) The grievance policy provides that a rejection may occur where the "grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance. . . ." (ECF No. 31-2, PageID.129 (MDOC Policy Directive 03.02.130 J (4)).) The Step I grievance response does not indicate which staff member was the "most directly involved." Gardiner's Step I grievance indicates that he discussed this matter with the nurses and PA Westcomb. In other words, he discussed the matter with everyone involved.

Grievance Coordinator Lancour[4] attests that he rejected the grievance because "prisoners are required to submit healthcare kites to resolve healthcare issues before

---

[4] Although, Gardiner argues that Lancour's affidavit was not properly sworn, the copy in the Court record is signed and notarized. (ECF No. 31-4, PageID.150.)

filing a grievance." (ECF No. 31-4, PageID.149.) First, Lancour did not indicate in his grievance response that Gardiner was required to kite healthcare to request treatment before he filed a grievance. Second, the grievance policy does not indicate that a grievance could be rejected regarding healthcare issues if a kite was not first sent. The policy provides:

> Q. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

(ECF No. 31-2, PageID.131.) The policy does not indicate how a prisoner is required to attempt to resolve the issue with staff. A grievance coordinator, like a prisoner, is required to follow MDOC policy as written.

Defendants RNs Bergh, Bedient, and Wright argue that there was an additional reason for the rejection. Grievance coordinator Lancour also attests that Gardiner's grievance was rejected for a second reason: because Gardiner used "demeaning language." (ECF No. 31-4, PageID.149.) Lancour attests that he could not include that reason because the template he uses only allows him to include the first reason for the rejection. Gardiner did state that the nurses' treatment was "lazy or incompetent." (ECF No. 31-3, PageID.145.) The grievance policy states that a grievance shall be rejected if it contains:

> 6. It contains profanity, threats of physical harm, or language that demeans the character, race, ethnicity, physical appearance, gender, religion, or national origin of any person, unless it is part of the description of the grieved behavior and is essential to that description.

(ECF No. 31-2, PageID.129.)

First, it is unclear if the statement that the nurses were acting lazy or were incompetent in failing to treat Gardiner could fall under this section of the grievance policy.  Second, it is simply speculation at this point to argue that the grievance was rejected for a second undisclosed reason.  Lancour admits that he did not include this reason in his rejection of the grievance.  If he believed the grievance should have been rejected for this reason, then he should have included the reason in the rejection.  The fact that he used a template is an insufficient excuse for not including this reason in his rejection.  At this point, the only conclusion that the Court can make is that the MDOC waived any rejection based upon a perceived use of demeaning language in the grievance.  Third, the inclusion of "lazy or incompetent" treatment describes the treatment or lack of treatment that Gardiner received and is somewhat synonymous with deliberate indifference and negligence.  It is not clear that the statement was meant to be demeaning to the character of the nurses.  In the opinion of the undersigned, it is recommended that the Court find that a genuine issue of fact exists as to whether Gardiner properly exhausted this grievance.

But that does not mean that this grievance exhausted *all* of Gardiner's claims against each of the named Defendants.  This was the only grievance that Gardiner filed through Step III involving his knee treatment prior to filing this lawsuit. (ECF No. 31-3.)  Gardiner limited his grievance to the incident date alleged – December 12, 2020; and to the Defendants named in the grievance – Defendants RN Bedient and PA Westcomb.

Gardiner asserted in his grievance that when his knee popped out of place on December 12, 2020, the "nurses" did not do anything, and RN Bedient told him to "just deal with it." The grievance also states that PA Westcomb ordered an x-ray in August or September, but he had not received the x-ray. The grievance includes Gardiner's assertion that RN Bedient failed to provide him with care and treatment for his knee on December 12, 2020, and that PA Westcomb failed to provide him with an ordered x-ray of his knee by December 12, 2020.

Gardiner failed to name Defendants RN Bergh, RN Wright, or Corizon in his grievance. The MDOC requires a prisoner to identify the individuals being grieved, *Reed-Bey*, 603 F.3d at 324-25, and the subject matter of the grievance. *Mattox*, 851 F.3d at 596. An inmate must name each defendant in a properly exhausted grievance before he files a federal complaint. *Kean v. Hughes*, No. 1:12-cv-847, 2013 WL 5771146 at *2 (W.D. Mich. Oct. 24, 2013) ("The MDOC had no reason to address a claim against any other employee"). Where a prisoner fails to name a Defendant in his Step I grievance, or mentions an individual is involved for the first time during the Step III appeal of the denial of a grievance, the claim against that individual is not properly exhausted. *Id.* at *6. Generally, naming nursing staff is not enough to place RN Bergh and RN Wright on notice that the grievance was intended to be against them. This is especially true in this instance because Gardiner specifically named RN Bedient and PC Westcomb in the body of his grievance.

Gardiner also failed to name Corizon in his grievance. Gardiner argues that he was not required to name Corizon in his grievance because Corizon is an outside

vendor. Policy Directive 03.02.130 J(12) provides that a grievance against an outside vendor shall be rejected if "[t]he prisoner is grieving issues not within the authority of the Department to resolve." (ECF No. 31-2, PageID.130.) Importantly, the MDOC is responsible for providing inmates with adequate medical care for their serious medical needs. The MDOC therefore, has authority and the responsibility to resolve all issues involving necessary and appropriate medical care to prisoners. *Lincoln v. Corizon Health, Inc.*, 2:21-cv-245, 2022 WL 3647153 (W.D. Mich. Aug. 24, 2022) (dismissing Corizon for failure to exhaust administrative grievance remedies because plaintiff named "Corizon health care nurse" and not the corporation in his grievance).

The MDOC provides some inmates with medical care by employing an outside contractor. Corizon and the MDOC are in a contractual relationship and therefore Corizon is not an outside vendor but an independent contractor. The contract provides in part:

> **2.027 Relationship of the Parties** The relationship between the State and Contractor is that of client and independent contractor. No agent, employee, or servant of Contractor or any of its Subcontractors must be or must be deemed to be an employee, agent or servant of the State for any reason. Contractor will be solely and entirely responsible for its acts and the acts of its agents, employees, servants and Subcontractors during the performance of the Contract.

https://www.michigan.gov/documents/buymichiganfirst/9200147_266870_7.pdf. (State of Michigan Contract No. 071B9200147 at pp. 43). The MDOC is responsible for providing medical care to inmates and must still resolve all issues involving medical care to prisoners whether that care is provided by MDOC employees or independent contractors employed by Corizon. Ultimately, the MDOC has the

14

authority to resolve all medical issues presented by inmates within the prison grievance process and a grievance rejection under Policy Directive 03.02.130 J(12) could not apply. *Steinburg v. Corizon Health, Inc.*, 2022 WL 206171, * 2 (E.D. Mich. Jan. 21, 2022) (*quoting Winkler v. Madison County,* 893 F.3d 877, 890 (6th Cir. 2018) ("The principle is well settled that private medical professionals who provide healthcare services to inmates [at a state operated prison]  qualify as government officials acting under the color of state law for purposes of § 1983." )

Gardiner argues that the grievance process was unavailable to him because he had no chance of resolving his issue through the grievance process.  Relying on *Ross*, Gardiner argues that the MDOC grievance process is a "dead end" without any chance of relief, is nothing more than an "administrative scheme" that no ordinary prisoner could navigate, and that MDOC officials have thwarted Gardiner by "misrepresentation-via-machination."   (ECF No. 34, PageID.176.)   Gardiner's argument that the grievance system was unavailable to him consists of no more than conclusory assertions that he fails to support with factual allegations.  Simply because his claims were rejected, even if wrongfully, does not make the MDOC grievance process unavailable or incapable of providing relief to prisoners.  Most importantly, Gardiner did file a grievance, but he failed to name all the Defendants in his grievance.  Gardiner has not alleged that he was prevented by any MDOC official from including all the Defendants in his grievance.

**V. Gardiner's motion for summary judgment (ECF No. 49.)**

Gardiner argues that he is entitled to summary judgment because Defendants failed to provide valid arguments in their motions for summary judgment raising the issue of exhaustion of administrative remedies. But even if Gardiner establishes that he exhausted his administrative remedies, he is not entitled to summary judgment.

First, it is Defendants' burden to establish that Gardiner failed to exhaust his administrative remedies when they raise the issue in a dispositive motion. *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) ("The Sixth Circuit has never adopted a burden-shifting approach for the defense of PLRA exhaustion."). If Defendants fail in their burden, summary judgment is not granted to Plaintiff. Rather, Plaintiff is simply allowed to proceed in his lawsuit. Plaintiff has the burden of proof to establish that his complaint has merit. It is Plaintiff who must prove each allegation of his lawsuit.

Gardiner is not entitled to summary judgment simply because Defendants failed to establish that he did not properly exhaust his administrative grievance remedies on each of his asserted claims. This is because Gardiner does not have the burden to establish that he exhausted his administrative remedies.

Finally, Gardiner's motion for summary judgment fails to establish that there are no genuine issues of material fact on the merits of his Eighth Amendment claims which could entitle him to relief.

**VI. Recommendation**

It is respectfully recommended that the motions for summary judgment filed by Defendants Bedient, Bergh, and Wright and by Defendants Corizon and PA Westcomb be granted in part and denied in part as follows:

The undersigned respectfully recommends that this Court dismiss Gardiner's claims against RN Bergh, RN Wright, and Corizon without prejudice due to Gardiner's failure to properly exhaust his administrative remedies against them before he filed this lawsuit.

It is further recommended that the Court deny Plaintiff Gardiner's motion for summary judgment.

If the Court adopts this recommendation, the Eighth Amendment claims arising on or before December 12, 2020, against RN Bedient for failure to provide treatment and PC Westcomb for failure to provide an x-ray remain in this case.


Dated:   December 28, 2022                    /s/ *Maarten Vermaat*
                                              MAARTEN VERMAAT
                                              U. S. MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).